UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**MARGARET D. NEWTON,**             )
                                    )
    **Plaintiff,**                )
                                    )
    **v.**                        )    **Civil Action No. 11–2302**
                                    )
**OFFICE OF THE ARCHITECT OF**      )
**THE CAPITOL,**                    )
                                    )
    **Defendant.**                )
_____ )

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Before the Court is defendant's Motion to Dismiss or for Summary Judgment. July 30, 2012, ECF No. 6. Upon consideration of defendant's motion, plaintiff's opposition, ECF No. 13, defendant's reply, ECF No. 16, applicable law, and the record in this case, this Court will GRANT defendant's motion to dismiss and will dismiss plaintiff's claims with prejudice.

**II.    BACKGROUND**

This is the third case filed by plaintiff Margaret Newton against her employer, the Office of the Architect of the Capitol ("OAC"), for employment discrimination and related offenses under the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1311 & 1317. *See Newton v. Office of the Architect of the Capitol* ("*Newton I*"), 840 F. Supp. 2d 384 (2012) (granting summary judgment in favor of defendant OAC on discrimination, hostile work environment and retaliation claims); *Newton v. Office of the Architect of the Capitol* ("*Newton II*"), 839 F. Supp. 2d 112 (2012) (dismissing later-filed retaliation and hostile work environment claims). The

Court presented a more detailed background in its *Newton I* opinion, *see* 840 F. Supp. 2d at 388–90, and will now review only the facts relevant to this action.

Ms. Newton, an African-American, works as a Human Resources Specialist in the Employee Benefits & Services Branch of the OAC's Human Resources and Management Division ("HRMD"). Compl. ¶ 3, ECF No. 1. This suit is based on events that occurred between April and August of 2011. During this period, two employment discrimination suits were pending in this Court that Ms. Newton had filed against her employer. *Newton I*, 840 F. Supp. 2d 384 (complaint filed August 18, 2009; case decided March 12, 2012); *Newton II*, 839 F. Supp. 2d 112 (complaint filed September 14, 2010; case decided March 14, 2012).

In April 2011, Mary Yates, Ms. Newton's first line supervisor and Chief of the Employee Benefits and Services Branch, asked Ms. Newton to submit for review two retirement cases she had completed as part of her duties. Compl. ¶¶ 14 & 16; Pl.'s Opp'n at 5. Ms. Newton subsequently learned that a lawyer representing the OAC in the pending *Newton* cases had communicated with Yates about reviewing her work. Compl. ¶ 17; Pl.'s Opp'n at 2 & 6.

In June 2011, Lisa Maltbie was appointed as acting branch chief while Ms. Yates was on leave. Compl. ¶ 20. Ms. Maltbie referred retirement inquiries from some "disgruntled employees" to Ms. Newton—a retirement specialist. Compl. ¶ 23; Pl.'s Opp'n at 7.

In July 2011, Ms. Newton attended a meeting with Ms. Yates and Robert Wied, her second line supervisor, in which they confronted her with allegations regarding her deficient performance based on customer complaints. *See id.* ¶ 27; Def.'s Br. at 2–3. After this meeting, Ms. Newton received a letter of counseling. Compl. ¶¶ 25–26; Pl.'s Opp'n at 7.[1]

---

[1] Ms. Newton's Complaint also cites an August 2011 letter of counseling, *see* Compl. ¶ 35. However, OAC pointed out that there was no written record of such a letter. *See* Def.'s Br. at 3 n.2. In her opposition brief, Ms. Newton continues to assert that she received such a letter, Pl.'s Opp'n at 9, but in her declaration filed with that brief, she actually acknowledges that she received no such letter. *See* Pl.'s Opp'n to Def.'s Statement of Material Facts Not in

### III.   LEGAL STANDARD

A motion to dismiss is appropriate when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a failure occurs when the complaint is so factually deficient that the plaintiff's claim for relief is not plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept all factual statements made by the non-moving party as true when deciding a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, conclusory legal allegations devoid of any factual support do not enjoy the same assumption of truth. *Id*. at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### IV.   ANALYSIS

Ms. Newton raises retaliation claims under 2 U.S.C. § 1317 based on three incidents: (1) the request by Ms. Yates that she submit two cases; (2) Ms. Maltbie's referring of "disgruntled employees" with retirement inquiries to Ms. Newton; and (3) the July 2011 letter of counseling. She also asserts that this chain of events created a hostile work environment in violation of 2 U.S.C. §§ 1302 & 1311.

Finally, Ms. Newton also argues that courts have systematically erred by referring to Title VII judicial caselaw rather than the decisions of the Office of Compliance Board[2] when ruling on discrimination and retaliation claims brought under the CAA. Pl.'s Opp'n at 11–18.

---

Dispute at 8, Oct. 10, 2012, ECF No. 13. Accordingly, the Court takes this assertion as withdrawn and will not address it further.

[2] The Office of Compliance is the administrative body charged, among other responsibilities, with hearing complaints brought by Congressional employees under the various federal statutes made applicable to Congressional employers under the CAA. After completing the first two preliminary steps—counseling and mediation—an employee may elect to pursue his complaint either in federal court or administratively through the Office of Compliance. 2 U.S.C. § 1404. The employee may appeal an administrative decision to the Office of Compliance Board, and then to the Federal Circuit. § 1407(a). The D.C. Circuit explained that the CAA

> extended the protections of Title VII of the Civil Rights Act of 1964, as well as ten other remedial federal statutes, to employees of the legislative branch. In Subchapter IV Congress specified a three-step process that requires counseling and mediation before an employee may file a complaint

These arguments all fail.  The Court will consider each in turn.

### A.  Applicability of Title VII Caselaw to CAA Discrimination and Retaliation Cases

Ms. Newton argues that her hostile work environment and retaliation claims should be governed by principles outlined in Office of Compliance Board rulings rather than judicial interpretations of Title VII.  Pl.'s Opp'n at 11-17.

Ms. Newton has not identified any case in support of this theory, and precedent weighs against her.  Courts have consistently relied on judicial interpretations of Title VII when addressing the substance[3] of employment discrimination, hostile work environment, and retaliation claims brought under the CAA.  *See, e.g.*, *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 706 (D.C. Cir. 2009) ("The CAA incorporates much of Title VII's substantive law, but it establishes its own comprehensive administrative regime—including jurisdictional provisions."); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 492 (D.C. Cir. 2008) (noting that Title VII "applies to offices in the Legislative Branch as a result of the Congressional Accountability Act" and analyzing CAA discrimination and hostile work environment claims as Title VII claims); *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 15 (D.C. Cir. 2006) (presuming that Title VII principles apply to retaliation under the CAA); *Moran v. U.S. Capitol Police Bd.*, 2012 WL 3561420 at *4 (D.D.C. Aug. 20, 2012) ("Although the CAA contains its own retaliation provision, courts refer to the body of case law regarding discrimination under Title VII to evaluate claims of retaliation under the CAA."); *Herbert v. Office of the Architect of the Capitol*, 839 F. Supp. 2d 284, 291 n.2 (D.D.C. 2012) (noting that discrimination and

---

> seeking administrative or judicial relief. However, rather than use the pre-complaint regimes in place for other federal employees, Congress created an Office of Compliance and vested it with broad responsibility for counseling and mediation and adoption of rules of procedure.

*Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 701 (D.C. Cir. 2009).

[3] The contrast here is between the substance or merits of the discrimination or retaliation claim, which the CAA borrows from Title VII, with jurisdictional counseling and mediation requirements, which are specific to the CAA. *See Blackmon-Malloy,* 575 F.3d at 706.

retaliation "[c]laims brought under the CAA are analyzed under Title VII's familiar framework and standards. . . . Although the CAA includes its own anti-retaliation provision . . . courts routinely rely upon Title VII case law when evaluating whether a challenged employment action is sufficiently adverse under the CAA's anti-retaliation provision."); *Hollabaugh v. Office of the Architect of the Capitol*, 847 F. Supp. 2d 57, 66 (D.D.C. 2012) ("Claims arising under Section 1317 are analyzed under the framework and standards governing Title VII's anti-retaliation provision.").

Even setting aside the weight of precedent, Ms. Newton's argument also fails as a matter of statutory interpretation. First, the CAA provisions incorporating Title VII and prohibiting retaliatory conduct do so without reserving any deference to the decisions of the Board. *See* 2 U.S.C. §§ 1302, 1311 & 1317. Second, the statute suggests judicial, not Board, primacy by providing that courts, rather than the Board, shall (if necessary) have the final word on all complaints. An aggrieved employee may, after completing the counseling and mediation steps, choose to bring a complaint *either* administratively through the Office of Compliance, or in U.S. District Court, *see* § 1404, but administrative decisions are ultimately appealable to the Federal Circuit. § 1407(a)(1). Even within the administrative review process, the statute expressly endorses judicial primacy; hearing officers in those cases are to be "*guided by judicial decisions under the laws made applicable by section 1302 of this title* [i.e. Title VII] *and by Board decisions* under this chapter"—Board decisions which are *themselves* ultimately subject to judicial review. *See* 2 U.S.C. §§ 1302 & 1407(a)(1) (emphasis added). Third, the CAA does not give the Board any power to issue regulations defining the substance of employees' Title VII and retaliation based claims; while the Board may promulgate regulations to implement other incorporated statutes, such as the Family and Medical Leave Act, *See* § 1312(d), and the Fair

5

Labor Standards Act, *see* § 1312(b), there is no equivalent provision authorizing such regulations under Title VII.[4]

Accordingly, this Court will not look to Office of Compliance Board rulings to decide whether Ms. Newton's CAA retaliation and hostile work environment claims survive this Motion to Dismiss, but will instead rely on the CAA, caselaw interpreting that statute, and caselaw interpreting Title VII.[5]

### B. Retaliation Claims

CAA retaliation claims under 2 U.S.C. § 1317 are analyzed under the same standards as Title VII retaliation claims. *See Herbert,* 839 F. Supp. 2d at 291 n.2. Thus, to state a prima facie case, Newton must plausibly allege that "(1) [she] engaged in statutorily protected activity; (2) [she] suffered a materially adverse action by her employer; and (3) that a causal link connects to two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). A "materially adverse" action is a "significant change in employment status." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009). An action only qualifies as "materially adverse" if it could conceivably dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006); *see also Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (distinguishing between "purely subjective injuries" which are not actionable, and "objectively tangible harm," which is). Under these standards, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).

---

[4] Moreover, as defendants point out, the Office of Compliance's own manual states that the Board "has not adopted regulations on Title VII rights and protections. However, employing offices and covered employees may find it helpful to refer to court decisions interpreting Title VII." *See* Def. Ex. 1 at 2–A–1.

[5] Nothing here should be taken as suggesting that this would make any difference for Ms. Newton's case.

In *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (2008), the D.C. Circuit held that an employer issuing "a letter of counseling, letter of reprimand, and unsatisfactory performance review" containing "job-related constructive criticism" could not itself rise to the level of a materially adverse action necessary to sustain a claim of unlawful retaliation.  The Circuit also held that sick leave restrictions did not constitute a "materially adverse" action where the restrictions had never actually affected the plaintiff, *id.* at 1198, nor did a proposed suspension that was never imposed, *id.* at 1199.

### 1.   April 2011 — Yates' Request

Ms. Newton argues that she suffered illegal retaliation when her supervisor, Ms. Yates, allegedly acting on behalf of the lawyer representing her employer in one of her pending cases, requested that she submit two samples of her work for review. Compl. ¶¶ 14–17.  She has not alleged any harm or change to her employment status as a result of this request, but rather appears to suggest that the request itself constitutes a materially adverse action.

A supervisor's request to examine the workproduct of an employee, without more, cannot itself constitute a "materially adverse" action—if it did, any manager's authority to review a subordinate's workproduct would essentially disappear once the employee engaged in a protected activity.  *See Zelaya v. UNICCO Serv. Co.*, 733 F. Supp. 2d 121, 131 (D.D.C. 2010) (concluding that mere monitoring did not constitute a materially adverse action).  Here, the nature of the request makes it an especially unlikely candidate for material adversity: Ms. Yates' request allowed Ms. Newton to choose which of her completed cases to present for review.  This kind of request would not dissuade a reasonable worker from making or supporting a charge of discrimination and thus may not form the basis of a retaliation claim.  *See White,* 548 U.S. at 70.  And, even if there were some potential for the request to lead towards some actionable harm, Ms. Newton has not alleged that she suffered any such harm—or any other consequences from the

request.  *Cf. Baloch*, 550 F.3d at 1198-99.  Accordingly, this portion of her retaliation claim fails for want of material adversity.

### 2. June 2011—Maltbie Reference of Disgruntled Employees

Ms. Newton argues that she suffered illegal retaliation when her interim supervisor, Ms. Maltbie, referred "disgruntled" employees with retirement inquiries to her.  Compl. ¶ 23.

Ms. Newton worked in the retirement area, and fails to explain how these references of additional retirement cases could constitute a "significant change in employment status."  *See Douglas*, 559 F.3d at 552.  Her supervisor's directing of unpleasant customers in her direction may have made Ms. Newton unhappy or annoyed, but does not count as an "adverse employment action." As the Supreme Court noted, Title VII does "not set forth a general civility code for the American workplace."  *White*, 548 U.S. at 68 (internal quotations and citations omitted).  At most, this action amounts to a disagreement in management style and not the basis of a CAA retaliation claim.  *See Douglass*, 559 F.3d at 552.

### 3. July 2011—Letter of Counseling

Finally, Ms. Newton alleges that the July 2011 letter of counseling she received was illegal retaliation.  Compl. ¶¶ 25–26.  The letter was based on a prior meeting between Ms. Newton and her supervisors in which they discussed several customer service complaints against Ms. Newton.

Ms. Newton does not allege any harm that resulted from this letter, but rather appears to insist that the letter itself constitutes a materially adverse action.  However, the D.C. Circuit has held that "letter[s] of counseling" based on unsatisfactory performance and offering "job-related constructive criticism" are not themselves "materially adverse."  *Baloch*, 550 at 1199.  Accordingly, this claim also fails.

In sum, all three of Ms. Newton's retaliation claims fail for lack of material adversity.

### C. Hostile Work Environment Claim

Hostile work environment claims brought under the CAA are also analyzed under the principles of Title VII. *See, e.g., Brady v. Livingood,* 456 F. Supp. 2d 1, 9 (D.D.C. 2006), *aff'd sub nom. Brady v. Office of Sergeant at Arms,* 520 F.3d 490 (D.C. Cir. 2008). A workplace becomes "hostile" for the purposes of Title VII only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Ms. Newton's allegations do not meet this standard. She has alleged that her supervisors requested samples of her work, referred some difficult cases for her attention, and issued a letter of counseling. These allegations do not come close to portraying a workplace that is "permeated with discriminatory intimidation, ridicule and insult," nor do they effectively amount to a "change in the terms and conditions of employment." *See Harris*, 510 U.S. at 21; *Faragher*, 524 U.S. at 788. Accordingly, Ms. Newton has not stated a prima facie case of a hostile work environment.

### V. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is GRANTED, and plaintiff's claims are DISMISSED with prejudice. A separate order consistent with this Opinion shall issue on this date.

Signed by Royce C. Lamberth, Chief Judge, on November 21, 2012.